Patrick STRANE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7014.

Court of Appeals of Alaska.

Jan. 12, 2001.

Quinlan Steiner, Jill E. Farrell, and Michael Dieni, Assistant Public Defenders, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

The Alaska Legislature has authorized the courts of this state to issue special protective orders in domestic violence cases. These protective orders can contain one or more of the types of restraining provisions listed in AS 18.66.100(c)(1)-(7).[1] Under AS

---

1. These seven provisions of AS 18.66.100(c) authorize a court to:

(1) prohibit the respondent from threatening to commit or committing domestic violence, stalking, or harassment;

(2) prohibit the respondent from telephoning, contacting, or otherwise communicating directly or indirectly with the petitioner;

(3) remove and exclude the respondent from the residence of the petitioner, regardless of [the] ownership of the residence;

(4) direct the respondent to stay away from the residence, school, or place of employment of the petitioner or any specified place frequented by the petitioner or any designated household member;

11.56.740(a), if a person is subject to a domestic violence protective order that contains one or more of these seven restraining provisions, it is a crime for that person to "knowingly" commit or attempt to commit an act that violates these provisions.

In this appeal, we are asked to construe this criminal statute and determine what culpable mental state, if any, the State must prove with respect to the defendant's degree of awareness that their conduct violated (or might violate) the protective order. We conclude that the statute requires proof of a culpable mental state, but the statute is irresolvably ambiguous as to whether that culpable mental state is "recklessly" or "knowingly". Construing this ambiguity against the government, we conclude that the State must prove that the defendant acted "knowingly" as that term is defined in AS 11.81.900(a)(2).

### The positions of the parties to this appeal

■ The statute at issue, AS 11.56.740(a), declares:

A person commits the crime of violating a protective order if the person is subject to a protective order containing a provision listed in AS 18.66.100(c)(1)-(7) and knowingly commits or attempts to commit an act in violation of that provision.

The question, ultimately, is to determine what the legislature intended when it defined this crime in terms of "knowingly" committing or attempting to commit an act that violates the listed restraining provisions.[2]

Strane and the State approach this statute from radically different perspectives. Strane argues that the legislature used the word "knowingly" to convey the notion that the crime is committed only if the defendant understood the provision(s) of the protective order and was aware that, by their conduct, they were violating the protective order.

The State argues the polar opposite. The State contends that, just as ignorance of the law does not excuse a person's violation of a criminal statute, so too ignorance or misunderstanding of the provisions of a protective order does not excuse a person's violation of that order. The State argues that a person who violates the provisions of a protective order is guilty of a crime under AS 11.56.740(a) even if they acted with no culpable mental state—i.e., acted with absolutely no awareness that their conduct might violate the provisions of the order.

### The culpable mental state that would govern in the absence of a statute

The rule at common law—that is, the rule that would prevail in the absence of a statute—lies in between the positions staked out by Strane and the State. Violation of a domestic violence protective order is but one specific, codified instance of the more general crime of contempt of court. In previous cases dealing with contempt of court, this court has held (1) that the applicable culpable mental state is "recklessness" (i.e., the government must prove that the defendant recklessly disregarded the possibility that their conduct violated an order of the court), and (2) that a person charged with contempt can defend by asserting that they made a *reasonable* mistake concerning the terms or the effect of the court order.

■ Alaska law recognizes that not all violations of a court order are contemptuous. Indirect contempt (i.e., contempt of court not committed in the judge's presence) requires proof that the defendant acted "willfully" when the defendant violated the court's order. In this context, willfulness means that the defendant was aware of, and knowingly violated, the terms of the order:

(5)· prohibit the respondent from entering a propelled vehicle in the possession of or occupied by the petitioner;

(6) prohibit the respondent from using or possessing a deadly weapon if the court finds the respondent was in the actual possession of or used a weapon during the commission of domestic violence; [and]

(7) direct the respondent to surrender any firearm owned or possessed by the respondent if the court finds that the respondent was in

the actual possession of or used a firearm during the commission of the domestic violence[.]

2. "The guiding principle of statutory construction is to ascertain and implement the intent of the legislature." *Sakeagak v. State*, 952 P.2d 278, 284 (Alaska App.1998) (citing *Millman v. State*, 841 P.2d 190, 194 (Alaska App.1992)).

For an act of contempt to be willful, the defendant must have been aware of the requirements of the court order, and the defendant must knowingly violate the court's order. [Although some earlier cases seem] to suggest that "willfully" might require proof of a specific intent to violate a court order[, other] case law clarifies that [what is] required is an intentional act which the defendant knows violates the court order, not an act motivated by the intent to violate a court order.

*O'Brannon v. State*, 812 P.2d 222, 228 (Alaska App.1991).

■ Even when a defendant has knowingly violated the terms of a court order, the defendant may still defend by showing that there was some lawful excuse for failing to comply with the order. As the Alaska Supreme Court declared in *Johansen v. State*[3]:

> [When we speak of disobedience] of a lawful order of the court[,] [this] connotes more than the mere failure to comply with [the] order. The word "disobey" has the connotation of wilfully failing to comply, without some lawful or reasonable excuse for not complying. If such an excuse ... is established, there can be no contempt of the authority of the court.

*Johansen*, 491 P.2d at 767 (footnote omitted).

Thus, Alaska case law on this subject is at odds with the State's position in this appeal—the State's argument that any violation of a restraining order is contemptuous, even though the defendant acted with no culpable mental state.

On the other hand, decisions from other jurisdictions indicate that contempt can be proved even when the defendant does not subjectively "know" or understand the precise terms of the court order. Instead, the requisite "willful" failure to comply can be established by proof that the defendant recklessly disregarded the possibility that their conduct violated the requirements of a court order. This rule is illustrated most starkly in cases where defendants purposely refused to read or listen to a court order, so that they remained ignorant of the exact terms of the order. In such cases, courts have upheld contempt convictions even though the defendants could truthfully assert that they were not subjectively aware of the precise requirements of the court order.[4]

In *Russell v. State*[5], this court adopted and implemented this interpretation of the law. The defendant in *Russell* was convicted of AS 9.50.010(10), a statute that codifies another aspect of contempt: disobedience of a properly served subpoena. Russell was subpoenaed to attend a criminal trial scheduled to commence in January 1988. When the trial was postponed until March, the trial judge ordered that all existing subpoenas would remain in effect.[6] Although Russell was informed that the trial had been postponed, she failed to appear in March. She claimed that she mistakenly believed that her subpoena was no longer valid once the trial was rescheduled.[7]

■ One might plausibly argue that Russell's defense amounted to a claim of "mistake of law"—a mistake concerning the legal effect of the subpoena. However, this court characterized Russell's defense as "a mistake of fact".[8] This characterization makes a crucial difference. Alaska law generally does not recognize mistake of law as a defense to a criminal charge.[9] But under AS 11.81.620(b), a mistake of fact will constitute a defense if the mistake is reasonable and if

3.  491 P.2d 759 (Alaska 1971).

4.  *See Vermont Women's Health Center v. Operation Rescue*, 159 Vt. 141, 617 A.2d 411, 415–16 (1992); *People v. Poe*, 236 Cal.App.2d Supp. 928, 47 Cal.Rptr. 670, 677–78 (1965); *United States v. Southern Wholesale Grocers' Ass'n*, 207 F. 434, 444 (N.D.Ala.1913).

5.  793 P.2d 1085 (Alaska App.1990).

6.  *See id.* at 1087.

7.  *See id.*

8.  *See id.*

9.  AS 11.81.620(a) declares: "Knowledge, recklessness, or criminal negligence as to whether conduct constitutes an offense, or knowledge, recklessness, or criminal negligence as to the existence, meaning, or application of the provision of law defining an offense, is not an element of an offense unless the provision of law clearly so provides."

it either negates the culpable mental state required for commission of the offense or supports a defense of justification. Accordingly, this court declared that Russell's guilt hinged on two issues: (1) did the government prove that Russell acted with at least reckless disregard of the subpoena's directive to appear?, and (2) if Russell was truly mistaken concerning the continuing effect of the subpoena, was this mistake reasonable?

> The judge [who adjudicated the contempt charge] found that, at best, Russell acted recklessly in assuming that her subpoena was no longer valid because the trial had been postponed. On this basis, the judge concluded that Russell's subjective belief that the subpoena was no longer valid did not absolve her of responsibility for contempt.
>
> [The judge's] ruling is not error. Under AS 11.81.620(b), a mistake of fact can be a defense to a crime only when it is a reasonable mistake. There is ample evidence in the record to justify [the] finding that, if Russell actually did believe [that] she was no longer bound to appear, her mistake was not reasonable. Accordingly, [the evidence supports] Russell's conviction for contempt of court.

*Russell*, 793 P.2d at 1087.

This court's decision in *Russell* stands as a rejection of the State's position in the present appeal: the contention that a defendant's violation of a restraining order can never be excused because of the defendant's ignorance of the terms of the restraining order or the defendant's misunderstanding concerning the meaning of those terms. Under *Russell*, questions as to what conduct is required or prohibited by a court order are treated as questions of fact. When the government charges a defendant with violating a court order, the fact that the court order requires or prohibits certain conduct is the circumstance that makes the defendant's conduct a contempt.

In deciding what culpable mental state the government must prove with respect to this circumstance, *Russell* adopted the approach codified in AS 11.81.610(b)(2): when a person's conduct constitutes a crime only under a particular factual circumstance, the govern-

ment normally must prove that the defendant acted "recklessly" with respect to that circumstance. In addition, *Russell* recognized that a defendant charged with violating a court order could claim the defense of reasonable mistake codified in AS 11.81.620(b). Because the court order is a factual circumstance that determines the legality of the defendant's conduct, the law will excuse the defendant's conduct if (1) the defendant made a reasonable mistake concerning the terms of the court order, and if (2) under this reasonable but mistaken interpretation of the court order, the defendant's conduct did not violate the order.

■ As explained above, the approach adopted in *Russell* flows from the explanations of the law of contempt contained in *O'Brannon* and *Johansen*. We therefore reaffirm that the approach taken in *Russell* is a correct interpretation of the common law of contempt—the law that governs adjudications of contempt in the absence of a statute. Under Alaska common law, contempt requires proof that the defendant recklessly disregarded the possibility that their conduct violated a court order, and defendants are allowed to plead reasonable mistake of fact as a defense. We reject the contrary arguments that the State presents in this appeal.

*Interpreting the statute at issue, AS 11.56.740(a)*

The foregoing discussion of the common law does not resolve Strane's case. Strane is charged with violating a statute, AS 11.56 .740(a), and not the common-law crime of contempt. The statute declares that a person commits the crime of violating a protective order if the person "knowingly" commits an act (or attempts to commit an act) that violates the protective order.

As explained above, when a statute declares that conduct is criminal only under certain circumstances, AS 11.81.610(b)(2) provides that the government must normally prove that the defendant acted "recklessly" with respect to those circumstances—unless the statute prescribes a different culpable mental state. Here, the statute in question could be read to require proof that the defen-

dant acted "knowingly" with respect to the inculpating circumstance (*i.e.,* the circumstance that the defendant's conduct violated a domestic violence protective order).

The problem is that the legislature's use of the word "knowingly" is ambiguous. As explained in the legislative commentary to AS 11.81.900(a)(1)-(4) [10], the culpable mental state of "knowingly" can apply to conduct (in fact, it is the sole culpable mental state that applies to conduct), and it can also apply to circumstances. Thus, there are two potential ways of interpreting AS 11.81.740(a).

One interpretation is that the word "knowingly" applies to the defendant's conduct. Under this first interpretation, the statute would mirror the elements of contempt under common law. The State would have to prove that Strane knowingly engaged in conduct, that his conduct violated the terms of the protective order, and that Strane recklessly disregarded the possibility that his conduct violated the protective order. That is, the State would have to prove that Strane was aware of and consciously disregarded a substantial and unjustifiable risk that his conduct violated the court order.[11] Strane could assert a defense of mistake of fact (mistake concerning the requirements of the court order), but this mistake would have to be reasonable.

On the other hand, the legislature might have intended the word "knowingly" to apply to the fact that the defendant's conduct (or attempted conduct) violated the terms of the protective order. Under this second interpretation, the State would again have to prove that Strane knowingly engaged in conduct (since "knowingly" is the only culpable mental state that applies to conduct), and that Strane's conduct violated the terms of the protective order. But instead of merely proving that Strane acted "recklessly" with respect to the circumstance that his conduct violated the court order, the State would have to prove that Strane "knowingly" disregarded the fact that his conduct violated the

protective order. That is, the State would have to prove that Strane knew that his conduct violated the court order or, in the alternative, (1) that Strane was aware of a substantial probability that his conduct violated the court order and (2) that he did not actually believe that his conduct was permitted by the court order.[12]

In practical terms, these differing interpretations of the statute lead to two major differences in the way the criminal charge would be prosecuted and defended.

The first difference concerns the defendant's level of subjective awareness that their conduct might violate the terms of the protective order. If the culpable mental state is "recklessly", the State would have to prove only that the defendant consciously disregarded a *substantial and unjustifiable risk* that their conduct violated the protective order. But if the culpable mental state is "knowingly", the State would have to prove that the defendant *knew* that their conduct violated the protective order or, at least, that the defendant was aware of a *substantial probability* that their conduct violated the order.

The second difference concerns the issue of whether a defendant should be found guilty if they honestly but *unreasonably* believed that their conduct was permitted by the protective order. If the culpable mental state is "recklessly", then the rule announced in *Russell* would apply: a defendant could assert a defense of "mistake of fact" under AS 11.81.620(b), but the defendant's mistake would have to be reasonable. If the defendant's mistake about the requirements of the protective order was unreasonable, it would be no defense. But if the culpable mental state is "knowingly", then any honest mistake, even an unreasonable mistake, would appear to be a good defense to the charge.

This follows from the definition of "knowingly" contained in AS 11.81.900(a)(2). Applying this definition to the crime of violating a protective order, the State would have to

---

**10.** *See* 1978 Senate Journal, Supp. No. 47 (June 12th), pp. 139–142.

**11.** *See* AS 11.81.900(a)(3), the definition of "recklessly".

**12.** *See* AS 11.81.900(a)(2), the definition of "knowingly".

prove either (1) that the defendant *knew* that their conduct violated the protective order or (2) that the defendant *was aware of a substantial probability* that their conduct violated the order *unless the defendant actually believed that their conduct was permitted by the order.* Under either theory of prosecution, if the defendant honestly believed that their conduct was permitted by the protective order, this honest mistake—even if unreasonable—would constitute a defense to the charge.

(We note, however, that, according to the legislative commentary to AS 11.81.900(a)(2), a defendant's mistake will not be deemed honest or in good faith if the defendant is guilty of willful blindness—that is, if the defendant "deliberately avoids acquiring [the pertinent] knowledge by closing his eyes".[13])

Which interpretation of the statute did the legislature intend? The legislative history of AS 11.56.740(a) is scanty. It is clear that this statute was intended to supersede AS 11.61.120(a)(6), an earlier provision dealing with violations of protective orders that was part of the statute on "harassment". Under this former statute, it was a crime to violate a protective order if the defendant acted "with intent to harass or annoy another person".

According to the minutes of a hearing held on February 7, 1991, by the House Committee on Health, Education, and Social Services, AS 11.56.740(a) was drafted by Representative (now Lieutenant Governor) Fran Ulmer, and the goal of the statutory change was to improve legal protection for victims of domestic violence by eliminating the requirement that the State prove an intent to harass or annoy:

> Representative Fran Ulmer told the committee that [House Bill 44] came as a result of conversations she has had ... with individuals in the law enforcement community as well as people who work in domestic violence shelters around the state ... who pointed out some shortcomings

pertaining to the protection of victims of domestic violence.

> [The bill] includes ... [a] change in the harassment statute to clarify that if a person knowingly violates a provision of a domestic violence restraining order, the crime of harassment is committed. Under current law, arrests and prosecutions are not being made because it is difficult to prove that the defendant acted with "intent" to harass.

But these committee minutes are just as ambiguous as the resulting statute itself on the question facing this court: does the culpable mental state of "knowingly" apply just to the defendant's conduct, or does it also apply to the defendant's degree of awareness that their conduct violated the protective order?

When we turn to the principles of statutory construction, we find that two common principles of construction point to opposing conclusions in this case.

■ The first principle is that "statutes imposing criminal liability should be construed narrowly. When the scope of a criminal statute is unclear, courts should normally construe the statute against the government—that is, construe it so as to limit the scope of criminal liability."[14] Here, the question is which culpable mental state—"recklessly" or "knowingly"-applies to the defendant's degree of awareness that their conduct violated the terms of the protective order. If we follow the principle that ambiguous criminal statutes should be construed to limit criminal liability, we should construe AS 11.56.740(a) to require proof that the defendant acted "knowingly" with respect to this circumstance.

But the second principle is that "statutes in derogation of the common law should be construed strictly."[15] That is, when courts are presented with a question as to the proper construction of a statute that potentially modifies the common law, "the normal rule of interpretation is that such statutes are con-

**13.** *See* 1978 Senate Journal, Supp. No. 47 (June 12th), pp. 140–41.

**14.** *State v. ABC Towing*, 954 P.2d 575, 579 (Alaska App.1998).

**15.** *Id.*

strued so as to preserve the pre-existing common law unless the legislature has clearly indicated its purpose to change that law."[16] Here, as explained above, the common law would require proof that Strane acted "recklessly" with respect to the circumstance that his conduct violated the protective order. If we follow the principle that statutes should not be construed to alter the common law unless the legislature has clearly indicated their intention to do so, we should construe AS 11.56.740(a) to require proof that Strane acted "recklessly" with respect to the circumstance that his conduct violated the protective order.

But this second principle arguably should not apply to Strane's case. As explained above, the legislature first codified this crime (violation of a protective order) as part of the harassment statute. At that time, the crime required proof of intent to harass or annoy— an unmistakable departure from the common law. Now, under AS 11.56.740(a), the definition of the crime is closer to common-law contempt. But the statute's ancestry indicates that the legislature may still be purposefully departing from the common-law definition of the crime.

Finally, we note that both potential interpretations of the statute are reasonable. That is, policy arguments could be made in favor of each of the competing culpable mental states—"knowingly" or "recklessly".

■ In these circumstances, we conclude that the principle of lenity should hold sway. The wording of the statute and its legislative history are irresolvably ambiguous on the issue before us. We can not tell which culpable mental state the legislature intended. In such a case, the law directs us to decide in favor of individual liberty and against the government.

We therefore hold that the applicable culpable mental state is "knowingly". To prove Strane guilty of violating a protective order under AS 11.56.740(a), the State must prove that Strane acted "knowingly" with respect to the circumstance that his conduct violated the protective order. That is, the State must prove that Strane knew that his conduct violated the order or, alternatively, that Strane was aware of a substantial probability that his conduct violated the order, unless Strane actually believed that his conduct did not violate the order.

Despite the wording of the last sentence, we do not intend to express any opinion on the question of who bears the burden of production or proof on the issue of Strane's potential actual belief that his conduct did not violate the court order. With respect to any inculpatory circumstance, AS 11.81.900(a)(2) declares that a defendant's awareness of a "substantial probability" of the existence of that circumstance is enough to establish guilt "*unless* the [defendant] actually believes [that the circumstance] does not exist". (Emphasis added.) As we have explained, this statutory definition allows a defense for honest but unreasonable mistakes of fact—a broader defense than the reasonable mistake of fact defense codified in AS 11.81.620(b). But based on the wording of AS 11.81.900(a)(2), it is conceivable that an honest, unreasonable mistake is an "exception" to criminal liability—meaning that the defendant would bear the burden of proof on this issue, or at least the burden of coming forward with evidence.[17]

*Conclusion*

The district court ruled that even if Strane had a good-faith belief that his conduct did not violate the terms of the protective order, this belief was irrelevant to his guilt or innocence under AS 11.56.740(a). We have concluded that this ruling was error. Even at common law, a reasonable mistake concerning the requirements of a court order is a potential defense to a charge of contempt. And, because we have construed AS 11.56.740(a) to require proof that a defendant acted "knowingly" with regard to the circumstance that their conduct violated the protective order, Strane can potentially defend on the basis of a good-faith mistake concerning the terms of the protective order, even if that mistake was objectively unreasonable.

16. *Id.*

17. *See Trout v. State,* 866 P.2d 1323, 1324–25 (Alaska App.1994).

Strane was convicted at a bench trial. Normally, when a defendant is tried without a jury and we later conclude that the trial judge applied the wrong law in finding the defendant guilty, we would vacate the defendant's conviction and direct the trial judge to re-assess the defendant's guilt or innocence under the proper law. But here, Strane agreed to a bench trial only after the district court ruled that he could not defend the charge by asserting a good-faith mistake. Under these circumstances, we conclude that Strane should be given a choice: either to consent to a second bench trial, or to rescind his waiver of jury trial and be tried by jury.

Strane's conviction for violating a protective order is REVERSED, and this case is remanded to the district court for further proceedings on the complaint.