**STATE of Alaska, Petitioner,**

v.

**Patrick STRANE, Respondent.**

**No. S–10033.**

Supreme Court of Alaska.

Jan. 10, 2003.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Petitioner.

Quinlan Steiner, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Respondent.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

BRYNER, Justice.

### I. INTRODUCTION

Patrick Strane was charged with violating a domestic violence protective order after police found him driving in a car with D.A., who had recently obtained an order prohibiting Strane from having contact with her. Strane claimed to have acted under the belief that the order would not apply if D.A. consented to the contact. But the district court precluded Strane from asserting this belief at trial, ruling as a matter of law that D.A.'s conduct had no effect on the protective order's requirements and that Strane's mistaken belief to the contrary was not a defense. The court then found Strane guilty. The question now presented is whether Strane was entitled to a defense based on his mistaken belief that the no-contact order was inapplicable. Because Alaska law provides that a protective order's no-contact requirements apply regardless of the protected person's willingness to have contact, we conclude that the district court properly barred Strane's claim as an impermissible mistake-of-law defense.

### II. FACTS AND PROCEEDINGS

D.A. obtained a twenty-day domestic violence protective order prohibiting Patrick Strane from being in her physical presence or telephoning, contacting, or otherwise communicating with her, directly or indirectly. Two weeks later, a police officer stopped Strane's car for speeding and found D.A. in the car with Strane. Strane said that D.A. had contacted him and that Strane believed he was allowed to have contact with her if she consented. Strane was nonetheless charged with violating the protective order in violation of AS 11.56.740(a).

On the morning of trial, the state moved to exclude any evidence that Strane might offer to establish his belief that the protective order did not prohibit consensual contact. The state argued that mistake of law was not a defense to the offense. District Court Judge John R. Lohff granted the state's motion, barring Strane from claiming innocence on the basis of his mistaken belief that D.A.'s willingness to have contact with him overrode the no-contact order's provisions.

Given this ruling, Strane waived his right to a jury trial and agreed to submit the case to Judge Lohff for decision on essentially the following facts:

1. A twenty-day protective order that prohibited Strane from being in the presence of or having contact with D.A. was issued against him on January 21, 1998;

2. The protective order was properly served upon and read to him by a police officer on January 28, 1998;

3. D.A. telephoned Strane and asked him to pick her up;

4. On February 2, 1998, Strane was stopped for speeding;

5. At the time he was stopped, D.A. was a passenger in his car;

6. Strane understood that the protective order prohibited him from contacting D.A., but he did not realize it also prohibited him from being in her "mere presence."

Judge Lohff found Strane guilty of violating the order, rejecting his claim that the state had the burden of proving that he knew that his conduct was unlawful.

The court of appeals reversed Strane's conviction, ruling that the district court had erroneously construed the statute defining the offense of violating a domestic violence restraining order—AS 11.56.740(a)—as creating a strict liability offense.[1] We vacated the court of appeals's opinion and remanded the case, directing that court to focus more narrowly on the propriety of the specific defense proposed by Strane in light of the undisputed facts in his stipulation.[2]

On remand, the court of appeals again reversed Strane's conviction, concluding that Strane had a right to present a defense

---

**1.** *See State v. Strane,* Mem. Op. & J. No. 0935 at 2–3 (Alaska, September 22, 1999) (vacating *Strane v. State,* 981 P.2d 122 (Alaska App.1999), *withdrawn,* 1999 WL 378740 (Alaska App.1999)).

**2.** *Id.* at 4.

alleging that he made a good faith mistake as to how D.A.'s consent affected his no-contact order.[3] We granted the state's petition for hearing to consider this ruling.

## III. DISCUSSION[4]

 Paragraphs (1)-(7) of AS 18.66.100(c) allow a protective order issued in response to a domestic violence petition to restrict the respondent's contact with the petitioner in seven ways.[5] A separate criminal provision, AS 11.56.740(a), makes it a crime to violate these restrictions; at the time of Strane's alleged offense, AS 11.56.740(a) defined the crime as follows: "A person commits the crime of violating a protective order if the person is subject to a protective order containing a provision listed in AS 18.66.100(c)(1)-(7) and knowingly commits or attempts to commit an act in violation of that provision."[6] The heart of the controversy in this case is AS 11.56.740(a)'s language allowing a person to be convicted of violating a protective order only if that person "knowingly commits ... an act in violation of [AS 18.66.100(c)(1)-(7)]." The court of appeals called this language "irresolvably ambiguous" and thoughtfully analyzed the ambiguity's implications.[7] The court began by describing two equally plausible meanings suggested by subsection .740(a)'s use of "knowingly": either the word refers solely to conduct, requiring only that the defendant act knowingly with respect to the conduct that constitutes the offense, or it refers to both the person's conduct and the circumstances that make the conduct unlawful, requiring that the person act knowingly *and* with knowledge that a no-contact order applies to that action.[8]

 To resolve this ambiguity, the court of appeals turned to the principle of lenity—a maxim of statutory construction holding that "statutes imposing criminal liability should be construed narrowly."[9] Reading subsection .740(a) narrowly in keeping with this principle, the court interpreted the statute's declaration that a defendant must "knowingly" commit an act in violation of a no-contact order as requiring the state to prove that Strane knowingly had contact with D.A. and, in doing so, knowingly disregarded the fact

---

**3.** *See Strane v. State,* 16 P.3d 745, 752 (Alaska App.2001).

**4.** We review questions of statutory construction de novo. *Todd v. State,* 917 P.2d 674, 677 (Alaska 1996). When interpreting statutes, we use the statutory language as our "primary guide." *Commercial Fisheries Entry Comm'n v. Apokedak,* 680 P.2d 486 489-90 (Alaska 1984). We also consider collectively statutes addressing common subject matter, reading them "as a whole in order that a total scheme evolves which maintains the integrity of each act and avoids ignoring one or the other." *Hafling v. Inlandboatmen's Union of Pacific,* 585 P.2d 870, 878 (Alaska 1978).

**5.** AS 18.66.100(c) provides, in relevant part:

A protective order under this section may
(1) prohibit the respondent from threatening to commit or committing domestic violence, stalking, or harassment;
(2) prohibit the respondent from telephoning, contacting, or otherwise communicating directly or indirectly with the petitioner;
(3) remove and exclude the respondent from the residence of the petitioner, regardless of ownership of the residence;
(4) direct the respondent to stay away from the residence, school, or place of employment of the petitioner or any specified place fre-

quented by the petitioner or any designated household member;
(5) prohibit the respondent from entering a propelled vehicle in the possession of or occupied by the petitioner;
(6) prohibit the respondent from using or possessing a deadly weapon if the court finds the respondent was in the actual possession of or used a weapon during the commission of domestic violence;
(7) direct the respondent to surrender any firearm owned or possessed by the respondent if the court finds that the respondent was in the actual possession of or used a firearm during the commission of the domestic violence[.]

**6.** AS 11.56.740(a) was amended in 2002 to read:

A person commits the crime of violating a protective order if the person is subject to a protective order containing a provision listed in AS 18.66.100(c)(1)-(7) and knowingly commits or attempts to commit an act with reckless disregard that the act violates or would violate a provision of the protective order.

**7.** *Strane,* 16 P.3d at 747, 750-52.

**8.** *Id.* at 750.

**9.** *Id.* at 751 (quoting *State v. ABC Towing,* 954 P.2d 575, 579 (Alaska App.1998)).

that his conduct violated the protective order.[10]

The court then addressed how this interpretation affected Strane's right to present a defense based on his mistaken belief that the protective order allowed consensual contact. The court started by considering the criminal code's provision defining "knowingly."[11] Under this provision, "a person acts 'knowingly' with respect to conduct or to a circumstance" if the person "is aware of a substantial probability of [the circumstance's] existence, unless the person actually believes it does not exist."[12] Applying this definition, the court concluded that "the State must prove that Strane ... was aware of a substantial probability that his conduct violated the order, unless Strane actually believed that his conduct did not violate the order."[13] And because this culpable mental state requirement would be defeated if Strane proved that he had genuinely believed that he was allowed to have consensual contact with D.A., the court of appeals ruled that the trial court erred in denying him the *opportunity to present this defense*:

> [B]ecause we have construed AS 11.56.740(a) to require proof that a defendant acted "knowingly" with regard to the circumstance that their conduct violated the protective order, Strane can potentially defend on the basis of a good-faith mistake concerning the terms of the protective order, even if that mistake was objectively unreasonable.[14]

The court of appeals thus reversed Strane's conviction.

The state urges us to reverse the court of appeals's ruling and to hold that subsection .740(a)'s requirement of knowing action applies only to the conduct element of the offense, not to its surrounding circumstances—that the offense only requires knowing action, not a subjective awareness of the prohibited nature of those actions. In response, Strane urges us to affirm the court of appeals's conclusion that the crime of violating a protective order can be committed only by a person who knowingly engages in prohibited actions and knows that those actions are prohibited.

In our view, however, the correct interpretation of subsection .740(a) lies somewhere between these opposing positions. As already mentioned, during the time at issue here subsection .740(a) provided that the crime of violating a protective order occurred when a "person is subject to a protective order ... and knowingly commits or attempts to commit an act in violation of [a no-contact provision included in the order]."[15] The court of appeals recognized that this definition comprises three necessary elements: prohibited conduct, an inculpating circumstance, and a culpable mental state.[16] The conduct element requires proof of contact between a person who is subject to a domestic violence protective order and the person ostensibly protected by that order; the inculpating circumstance element requires proof of a valid order containing a no-contact provision that prohibits this contact; and the culpable mental state requirement requires the crime to be committed "knowingly."

10. *Id.* at 752.

11. *Id.* (discussing AS 11.81.900(a)(2)'s definition of "knowingly").

12. AS 11.81.900(a)(2) defines the mental state of "knowingly":
 [A] person acts "knowingly" with respect to conduct or to a circumstance described by a provision of law defining an offense when the person is aware that the conduct is of that nature or that the circumstance exists; when knowledge of the existence of a particular fact is an element of an offense, that knowledge is established if a person is aware of a substantial probability of its existence, unless the person actually believes it does not exist; a person

who is unaware of conduct or a circumstance of which the person would have been aware had that person not been intoxicated acts knowingly with respect to that conduct or circumstance[.]

13. *Strane,* 16 P.3d at 752.

14. *Id.*

15. AS 11.56.740(a).

16. *See Strane,* 16 P.3d at 749–50 (explaining the culpable mental state required when a statute makes conduct criminal only under certain circumstances).

Under subsection .740(a)'s plain terms, the conduct element of the crime must be committed while the inculpating circumstance is present—the defendant must be "subject to" the protective order. But the scope of the culpable mental state requirement is ambiguous: it might attach only to the conduct element or it might also extend to the circumstance element. Invoking the rule of lenity, the court of appeals extended the culpable mental state requirement to both aspects of the offense.[17] We agree with this part of the court's ruling and affirm it.

But having decided to extend subsection .740(a)'s culpable mental state to the surrounding circumstances of the offense, the court of appeals reasoned that this extension meant that "the State would have to prove that Strane 'knowingly' disregarded the fact that his conduct violated the protective order."[18] We disagree with this part of the court's ruling because, in our view, it oversimplifies the circumstance element of the disputed offense.

As defined in subsection .740(a) at the time of Strane's offense, the circumstance element of the crime of violating a protective order required proof of at least three distinct circumstances: (1) the existence of a valid restraining order applicable to the defendant and the alleged victim; (2) the existence in the restraining order of at least one of the seven no-contact restrictions listed in AS 18.66.100(c)(1)-(7); and (3) the inclusion in at least one of these listed restrictions of a prohibition covering the specific contact that the defendant allegedly committed.[19] Thus, a culpable mental state element requiring Strane to "knowingly" disregard the circumstances surrounding his conduct might mean at least three different things: (1) that Strane had to know that a valid restraining order existed and named him as its subject; (2) that he also had to know of the order's contents—in other words, that he had to be on notice of the relevant no-contact provision; or (3) that, beyond knowing of the order's existence and contents, Strane had to understand its meaning and effect as applied to his conduct—that is, that Strane had to realize that the order prohibited his actions. In concluding that subsection .740(a) required Strane to act knowingly with respect to the inculpating circumstances of his conduct, the court of appeals found this third meaning applicable: to be convicted, the court ruled, Strane had to realize that his conduct violated the protective order.[20] But the court failed to explain why it adopted this meaning; indeed it did not recognize any other possible meaning. And compelling reasons weigh against the meaning it selected.

Perhaps the most prominent reason against construing subsection .740(a) to require actual knowledge of illegality resides in a sister provision to this subsection, AS 18.66.130, which expressly provides that a petitioner's consent to have contact with a respondent neither waives nor nullifies any provision in a protective order:

(a) If a respondent in a protective order issued under AS 18.66.100–18.66.180 is prohibited from communicating with the petitioner, excluded from the residence of the petitioner, or ordered to stay away from the petitioner as provided in AS 18.66.100(c)(2)-(5), an invitation by the petitioner to communicate, enter the residence or vehicle, or have other prohibited contact with the petitioner does not waive or nullify any provision in a protective order.[21]

---

**17.** *Id.* at 752.

**18.** *Id.* at 750. Relying on the statutory definition of "knowingly," AS 11.81.900(a)(2), the court of appeals also observed that the state could alternatively prove "that Strane was aware of a substantial probability that his conduct violated the order, unless Strane actually believed that his conduct did not violate the order." *Id.* at 752. Because this aspect of the statutory definition has no bearing on our decision, we need not discuss it here.

**19.** *See* AS 11.56.740(a).

**20.** *Strane,* 16 P.3d at 752.

**21.** AS 18.66.130(a). AS 18.66.130 also requires a protective order to expressly state in bold-face type that a petitioner's invitation "does not in any way invalidate or nullify the order." AS 18.66.130(d)(2). In keeping with this requirement, the protective order issued against Strane contained the bold-faced warning: "**If you are ordered to have no contact with the petitioner . . . an invitation by the petitioner to have the prohibited contact . . . does not in any way invalidate or nullify the order.**"

Enacted as part of the Domestic Violence Prevention and Victim Protection Act of 1996, this provision expressly limits the scope of defenses that might otherwise be available under AS 11.56.740(a).

Furthermore, by specifying that consent has no effect on a no-contact order, AS 18.66.130(a) activates another important provision of law, AS 11.81.620(a). This statute limits the effect that mistake or ignorance of the law can have on criminal liability: it prohibits courts from interpreting a provision defining a crime to require proof of "[k]nowledge, recklessness, or criminal negligence as to whether conduct constitutes an offense ... unless the provision of law clearly so provides." [22] Under the limiting effects of this ignorance-of-law provision, AS 11.56.740(a)'s ambiguous phrase "knowingly commits or attempts to commit an act in violation of [a protective order]," cannot be construed to require proof that Strane understood that his conduct constituted an offense. This conclusion follows because the mistake-of-law statute categorically forbids adopting this meaning "unless the provision of law *clearly* so provides"; [23] and because subsection .740(a)'s definition of the culpable mental state for violating a restraining order is, in the court of appeals's own words, "irresolvably ambiguous," [24] the statute's reference to knowing conduct certainly does not "clearly provide" for knowledge of illegality. The defense Strane sought to raise below—his mistaken belief concerning the effect of D.A.'s consent—thus falls squarely within AS 11.81.620(a)'s definition of a prohibited claim of ignorance of the law.

A recent court of appeals decision nicely illustrates this point, albeit in a slightly different statutory context. In *Busby v. State,* the defendant was convicted of driving while his license was revoked.[25] The court of appeals had previously held that the statute defining the crime of driving while license revoked required proof of criminal negligence as to the chief inculpating circumstance of the offense—the revoked status of the license.[26] Like Strane, who admitted knowing that a no-contact order existed at the time of his alleged offense, Busby acknowledged knowing that his Alaska license was suspended.[27] But Busby sought to defend himself based on his mistaken belief that an international driver's license he had subsequently obtained overrode the Alaska suspension and allowed him to drive.[28] In affirming the trial court's refusal to allow Busby to present this defense, the court of appeals explained:

> Busby admittedly knew that the State of Alaska had revoked his driver's license. That license revocation was what prompted Busby to research the law concerning international driving permits and the United Nations Convention on Road Traffic. Rather than claiming ignorance of his license revocation, Busby wanted to tell the jury about his understanding of the *legal effect* of that revocation. He wished to testify that, based on his legal research, he believed that his international driving permit entitled him to drive in Alaska despite the fact that his license was revoked.
>
> AS 11.81.620 declares that a defendant's "knowledge, recklessness, or criminal negligence as to the ... meaning ... or appli-

---

**22.** AS 11.81.620 declares:

Effect of ignorance or mistake upon liability.

(a) Knowledge, recklessness, or criminal negligence as to whether conduct constitutes an offense, or knowledge, recklessness, or criminal negligence as to the existence, meaning, or application of the provision of law defining an offense, is not an element of an offense unless the provision of law clearly so provides. Use of the phrase "intent to commit a crime", "intent to promote or facilitate the commission of a crime", or like terminology in a provision of law does not require that the defendant act with a culpable mental state as to the criminality of the conduct that is the object of the defendant's intent.

**23.** AS 11.81.620(a).

**24.** *Strane,* 16 P.3d at 747.

**25.** 40 P.3d 807, 809 (Alaska App.2002).

**26.** *Id.* at 816 (citing the interpretation of AS 28.15.291 adopted in *Gregory v. State,* 717 P.2d 428, 431 (Alaska App.1986)).

**27.** *Id.* at 816.

**28.** *Id.*

cation of the provision of law defining an offense ... is not an element of [the] offense unless the provision of law clearly so provides." AS 28.15.291(a), the statute defining the crime of driving with a suspended or revoked license, does not specify that the government must prove anything about the defendant's subjective understanding of the effect or scope of the license suspension or revocation. Instead, the government must prove that the defendant knew or should have known that the suspension or revocation had occurred. Therefore, it was irrelevant whether Busby had researched the Convention on Road Traffic, and it was likewise irrelevant whether Busby had mistakenly concluded, based on this research, that his international driving permit authorized him to drive in Alaska despite the fact that his Alaska license was revoked.[29]

For almost identical reasons, Strane's subjective understanding of the effect or scope of the protective order's no-contact restriction was likewise irrelevant. It does not matter whether Strane mistakenly concluded—for whatever reason—that the no-contact order was inapplicable to his conduct; what matters according to *Busby* is Strane's admitted awareness of the restraining order's existence and contents.

The court of appeals's opinion in *Strane* nevertheless suggested that the court thought a different rule applies to mistake-of-law claims in cases involving disregard for judicial orders.[30] This suggestion is embedded in *Strane's* discussion of an earlier court of appeals precedent, *Russell v. State*.[31] Mavis Russell had been subpoenaed to testify in a criminal trial and was charged with contempt after failing to appear.[32] She claimed at trial that she had believed the subpoena to be invalid.[33] In discussing this defense, the court of appeals in *Russell* observed that "[t]he essence of Russell's argument appears to be a claim of mistake of fact."[34] But in *Strane*, the court questioned *Russell's* characterization, commenting that "[o]ne might plausibly argue that Russell's defense amounted to a claim of 'mistake of law.'"[35] The court in *Strane* then construed *Russell* to stand for the proposition that "questions as to what conduct is required or prohibited by a court order are treated as questions of fact."[36] But this interpretation of *Russell* is overly broad, for *Russell's* characterization of the defense at issue there hinged on the unique facts of that case.

The subpoena at issue in *Russell* had originally ordered Mavis Russell to appear on January 12.[37] Without notifying Russell, the trial court canceled the January date and continued the trial until March.[38] Despite this cancellation, however, the court ordered the January 12 subpoenas to remain in effect, and Russell was later charged with contempt for failing to appear that day.[39] In the ensuing contempt trial, Russell attributed her failure to appear to a mistake that occurred because she learned that the trial had been continued but was never notified of the order keeping the original subpoenas in effect.[40] Given these circumstances, the dispute in *Russell* turned on Russell's lack of notice of the intervening order—a mistake involving a true question of fact—rather than her understanding of the original subpoena's meaning and effect. Thus, we do not read *Russell* to suggest that the usual rule precluding defenses based on ignorance of the law must be relaxed in prosecutions for violating judicial orders.

Nor does precluding Strane's mistake-of-law defense create a constitutional problem.

**29.** *Id.* at 816–17.

**30.** *See Strane,* 16 P.3d at 748–49.

**31.** 793 P.2d 1085 (Alaska App.1990).

**32.** *Id.* at 1086.

**33.** *Id.* at 1087.

**34.** *Id.*

**35.** *Strane,* 16 P.3d at 748.

**36.** *Id.* at 749.

**37.** *Russell,* 793 P.2d at 1086.

**38.** *Id.*

**39.** *Id.*

**40.** *Id.*

The court of appeals did not act out of constitutional necessity when it selected "knowingly" as the culpable mental state that applies to the circumstance element for the crime of violating a protective order.[41] Instead, it selected this standard only because the word "knowingly" appeared in the text of the statute then defining the offense.[42] Strane now claims that this culpable mental state is constitutionally mandated. Yet Strane cites no cases suggesting that due process requires courts to recognize claims of legal ignorance when they arise solely from the defendant's failure to understand an order whose meaning and effect are unambiguously spelled out by statute.

The closest Strane comes to a relevant precedent is *Hentzner v. State*.[43] But *Hentzner's* holding is unremarkable. Harry Hentzner had solicited money to develop gold mining claims, promising to repay the investments with gold from his claims.[44] He was convicted of selling unregistered securities under former AS 45.55.210(a), which provided that a "wilful violation" of the Securities Act was a felony.[45] The registration statute at issue relied on a definition of "security" that listed numerous undefined types of instruments and transactions, that ultimately encompassed "any interest or instrument commonly known as a 'security,'" and that had been construed as looking to federal securities law for a source of more precise definitional guidance.[46] Hentzner's charge was based on the theory that he had offered and sold an "investment contract," as that term was used in this definition.[47]

The trial judge told Hentzner's jury that Hentzner did "not have to intentionally violate the law; he (did) have to intentionally do the acts which are prohibited by law."[48] We reversed. Noting that the conduct regulated

by the Securities Act is *malum prohibitum*, that the act regulates extremely complicated commercial transactions, and that Hentzner's offenses were felonies carrying maximum terms of twenty years, we concluded that the statutory requirement of a "wilful violation" required something "more than mere conscious action."[49] We thus relied on contemporaneous federal cases construing similar securities statutes to hold that "in securities crimes prosecuted under statutes similar in structure to AS 45.55.210(a), 'wilful' requires awareness of wrongdoing as an essential element of the offense."[50] But while recognizing the "awareness of wrongdoing" standard as one that would certainly pass constitutional muster, we stopped short of holding that this particular culpable mental state was constitutionally necessary.[51]

Moreover, even if *Hentzner* had purported to adopt "awareness of wrongdoing" as a standard that was constitutionally mandated in the particular setting at issue there, that standard would not apply here, for Strane's case is distinguishable from Hentzner's in at least two ways. The first point of distinction involves the practical issue of notice. Before being prosecuted, Hentzner had received no prior warning or notice that he needed to comply with the requirements of the Securities Act; and even had he received such notice, the complexity of the act's regulatory regime and its intricate, abstract definition of securities would have made it extremely difficult for any reasonable person to confidently predict how the act might apply to Hentzner's activities. In stark contrast to Hentzner's situation, though, Strane received specific notice of his continuing obligation to comply with the domestic violence restraining order and was explicitly notified of the order's contents—its facially clear and un-

**41.** *See Strane,* 16 P.3d at 752.

**42.** *Id.*

**43.** 613 P.2d 821 (Alaska 1980).

**44.** *Id.* at 822.

**45.** *Id.* at 822, 824–25.

**46.** *See id.* at 823–24 & n. 4 (quoting AS 45.55.130 and discussing pertinent federal law).

**47.** *Id.* at 823.

**48.** *Id.* at 825.

**49.** *Id.* at 826–27 & n. 10.

**50.** *Id.* at 827.

**51.** *Id.* at 828.

qualified no-contact provisions. Had he bothered to check, moreover, Strane would have discovered black-letter law unambiguously confirming the order's literal meaning and scope. In these circumstances, then, knowledge of the order's existence and contents seems a fair substitute for *Hentzner's* "awareness of wrongdoing" requirement.

The second feature distinguishing Strane's case from *Hentzner* is the complete absence of precedent here. As noted above, *Hentzner* drew its "awareness of wrongdoing" test from a significant body of federal precedent addressing similar violations prosecuted under nearly identical securities laws. Yet here, by contrast, Strane cites no comparable case, let alone any line of case law, adopting subjective awareness of wrongdoing as a necessary or appropriate culpable mental state for a person accused of violating a domestic violence restraining order's no-contact provisions. We know of no decision from the domestic violence arena supporting Strane's position. And as the court of appeals observed in *Strane,* courts ruling in the analogous area of criminal contempt routinely apply a culpable mental state of reckless disregard, a standard less demanding on the prosecution than consciousness of wrongdoing, and one that does not permit defenses based on either a pure mistake of law or a good faith but unreasonable mistake of fact.[52]

In summary, then, the court of appeals ruled correctly insofar as it interpreted AS 11.56.740(a) as requiring the state to prove that Strane's actions were knowing, that he knew of the restraining order's existence, and that he was aware of its literal requirements. But the court erred in requiring the state to go further by proving that Strane also knew that his conduct violated the law— that he actually understood that the protective order's requirements applied to his actions regardless of D.A.'s consent and that his conduct therefore violated the protective order. As explained above, AS 18.66.130(a) precludes this interpretation by establishing as a matter of law that a respondent's consent has no legal effect on the requirements of a no-contact order. And under AS 11.81.620(a), Strane cannot claim ignorance of AS 18.66.130(a) as a defense to his charge, since the statutory definition of violating a protective order—AS 11.56.740(a)—contains no clear legislative directive allowing that defense.

We thus hold that AS 11.56.740(a) did not require the state to prove Strane's actual knowledge of illegality; instead, the statute's culpable mental state requirement as to the surrounding circumstances of the offense could be met by showing that Strane knew of the restraining order's existence and contents and that, so knowing, he recklessly disregarded a substantial and unjustifiable risk that his conduct was prohibited by the order. Since ignorance of the law is not a defense under this culpable mental state requirement, it follows that the district court did not err in precluding Strane from presenting his ignorance of law defense; and since Strane's recklessness as to the illegality of his conduct could readily be inferred from his admitted knowledge of the order's existence and contents, the stipulated evidence supports the district court's judgment of conviction.

## IV. CONCLUSION

For these reasons, we REVERSE the court of appeals's decision and AFFIRM the district court's judgment of conviction.

---

**52.** *Strane,* 16 P.3d at 748–49.