NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| BRANDON JAMES HUGHES, | Court of Appeals No. A-13683 |
| Appellant, | Trial Court No. 3AN-19-06045 CR |
| v. | |
| | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2768 — December 15, 2023 |

Appeal from the District Court, Third Judicial District, Anchorage, David Nesbett, Judge.

Appearances: Monique Eniero, Attorney at Law, under contract with the Public Defender Agency, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Seneca Theno Freitag, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Wollenberg, Harbison, and Terrell, Judges.

Judge HARBISON, writing for the Court.
Judge WOLLENBERG, concurring.

Brandon James Hughes was convicted, following a jury trial, of one count of violating a protective order for making a phone call to his ex-girlfriend.[1]  Hughes's defense was that he mistakenly believed that the protective order had been modified by a subsequent order that allowed him to make such calls, as long as the calls were not "excessive."  The trial court found that Hughes could not assert a mistake-of-law defense to this crime, but it found that Hughes's proposed defense was a permissible mistake-of-fact defense.  The court gave the jury an instruction on mistake of fact but also gave a mistake-of-law instruction that read, "A defendant's good faith, but mistaken, subjective belief as to the legal effect of the protective order is irrelevant."  Hughes challenges this instruction on appeal.

For the reasons explained in this opinion, we agree with Hughes that the court erred in giving this instruction.  We also agree that the court's error deprived Hughes of a meaningful opportunity to present his defense, requiring reversal of his conviction.

*Facts and proceedings*

On June 12, 2019, Hughes placed a phone call to his estranged ex-girlfriend, Jasmine Albert.  At the time of the call, Hughes and Albert were parties in two separate court proceedings.  One of these was a child custody case, and the other involved a domestic violence protective order that prohibited Hughes from contacting Albert by telephone.

Hughes was charged under AS 11.56.740(a) with violating the protective order, and the matter proceeded to trial.  At trial, Hughes did not deny that he made the phone call.  Instead, he claimed that he mistakenly believed that the no-contact provision

---

[1]  AS 11.56.740(a).

of the protective order had been modified by a later order issued in the child custody case which forbade him from calling Albert "excessively." Hughes characterized this as a mistake-of-fact defense, and argued that the mistake relieved him of criminal liability because it negated the culpable mental state for the charged offense.

The State disputed Hughes's characterization, labeling the defense as a mistake of law. During closing arguments, the prosecutor told the jury that whether Hughes "believed [the protective order] was in place or believed [] it allowed him to contact [Albert]" was "irrelevant." The prosecutor asserted that all that mattered was "what the document said he could or could not do" and whether "he knew about that document, but he did it anyway."

At Hughes's request, the trial court gave the jury an instruction on the defense of mistake of fact, which stated:

> A person is relieved of criminal liability for conduct if the person engages in the conduct under a mistaken belief of fact and the factual mistake is a reasonable one that negates the culpable mental state required for the commission of the offense.

However, the court also instructed the jury that Hughes's "good faith, but mistaken, subjective belief as to the legal effect of the protective order [was] irrelevant."

Following deliberations, the jury found Hughes guilty of violating the protective order.[2] This appeal followed.

---

[2] Hughes was also charged with and acquitted of a second count of violating the restraining order by calling Albert. With regard to that count, Hughes testified that he must have mistakenly dialed Albert's number while he was incarcerated. The evidence showed that "zero minutes" of the call were completed.

*Why we conclude that the trial court erred in giving its mistake-of-law instruction*

In order to establish that Hughes committed the crime of violating a protective order, the State was required to prove: (1) that he was subject to a protective order issued under AS 18.66, (2) that he knew of the protective order and was aware of its provisions, (3) that he committed or attempted to commit an act that violated one or more provisions of the order, and (4) that he recklessly disregarded the risk that his conduct would violate the protective order.[3]

On appeal, Hughes argues that the trial court erred when it instructed the jury to disregard his subjective belief about the scope of the protective order. He contends that his subjective belief was relevant to challenge the State's proof regarding the fourth element described above — *i.e.*, that he acted with reckless disregard that his conduct violated the protective order.

Under Alaska law, a person acts "recklessly" regarding a circumstance described in the definition of an offense if the person is aware of and consciously disregards a substantial and unjustifiable risk that the circumstance exists.[4] The risk must be of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. Thus, Hughes's defense could be viewed in two ways.

First, Hughes's defense could be that he was not aware that the protective order contained a provision prohibiting him from calling Albert because he believed that the provisions of the protective order had been modified by a subsequent court order that prohibited only excessive calls — *i.e.*, a mistake-of-fact defense. This is the defense that

---

[3]    AS 11.56.740(a).

[4]    AS 11.81.900(a)(3).

Hughes claims he was raising. Alternatively, Hughes's defense could be that he did not understand that the protective order prohibited him from calling Albert unless the calls were excessive — *i.e.*, a mistake-of-law defense. This is the defense that the State claims Hughes was actually arguing.

The parties' disagreement about whether Hughes's proposed defense was a mistake of law or a mistake of fact informs their understanding of the propriety of the court's instruction that Hughes's "good faith, but mistaken, subjective belief as to the legal effect of the protective order [was] irrelevant."

*Our recent consideration of the defense of mistake in Hughes's related case*

This Court has recognized the distinction between a defendant's assertion that they mistakenly believed the predicate factual circumstance that made their actions unlawful (in this case, the no-contact provision) did not exist and a defendant's assertion that they mistakenly believed the law did not prohibit their actions. We have characterized the former as a valid mistake-of-fact defense and the latter as a prohibited mistake-of-law defense.[5]

We recently applied these principles of law in *Hughes v. Anchorage*, a case in which the Municipality of Anchorage charged Hughes with violating the same protective order that is at issue in this case, and in the same way — *i.e.*, by calling

---

[5] *See, e.g.*, *Vickers v. State*, 175 P.3d 1280, 1283-84 (Alaska App. 2008); *Strane v. State* (*Strane I*), 16 P.3d 745, 748-49 (Alaska App. 2001); *Russell v. State*, 793 P.2d 1085, 1087 (Alaska App. 1990); *Thompson v. State*, 2014 WL 4805593, at *6-7 (Alaska App. Sept. 24, 2014) (unpublished) (Allard, J., concurring).

Albert.[6]  The telephone call in that case occurred on June 15, 2019, a few days after the call that led to the charge in the present case.

There, as here, Hughes argued that he mistakenly believed that the relevant provision of the protective order — the provision prohibiting him from contacting Albert — had been modified by the subsequent child custody order, and that, based on the modification, the order no longer prohibited him from calling Albert, as long as the calls were not "excessive."  But, in contrast to what occurred here, in that case, the trial court did not give the jury a specific instruction on either mistake of law or mistake of fact.  On appeal, Hughes argued that the trial court should have instructed the jury on both of these defenses.

We concluded that Hughes had asserted a permissible mistake-of-fact defense under AS 11.81.620(b)(1), which relieves a person of criminal liability if the person engages in conduct under a reasonable but mistaken belief of fact that "negates the culpable mental state required for the commission of the offense."[7]  But we also concluded that the court's failure to give the jury the additional instructions requested by Hughes did not appreciably affect the jury's verdict.  Hughes had fully developed his defense throughout the case, repeatedly asserting that his mistake negated the requisite mental state for the offense, and the trial court's instructions did not preclude Hughes's defense.

By contrast, in the present case, the trial court instructed the jury on mistake of fact as requested by Hughes, explaining that Hughes could be relieved of criminal liability if he "engage[d] in the conduct under a mistaken belief of fact and the factual

---

[6]  *Hughes v. Anchorage*, 2022 WL 534421, at *1-2 (Alaska App. Feb. 23, 2022) (unpublished).

[7]  *Id.* at *2.

mistake is a reasonable one that negates the culpable mental state required for the commission of the offense."[8]  But the trial court also instructed the jury that Hughes's "mistaken, subjective belief as to the legal effect of the protective order [was] irrelevant," and on appeal Hughes contends that this was error.  As a result, we now must consider more carefully the question we did not directly answer in *Hughes v. Anchorage*: whether a defendant accused of violating a protective order may properly argue *both* that they were not aware of the provisions of the protective order — *i.e.*, a mistake-of-fact defense — *and* that they had a mistaken understanding of the legal meaning of a protective order which relieves them of criminal liability for violating the order — *i.e.*, a mistake-of-law defense.

> *Alaska law regarding the circumstances under which a defendant may be relieved of liability based on mistake of law or fact*

We begin by recognizing that the mistake-of-law instruction given by the trial court in this case is consistent with the general principle of Alaska law that a defendant usually may not be relieved of liability based on a mistaken belief that their conduct was not unlawful.[9]  We have explained that this rule is intended to

> encourage people to learn and know the law; a contrary rule would reward intentional ignorance of the law.  The traditional rule of law that mistake of law is not a defense is based upon the fear "that its absence would encourage and reward public ignorance of the law to the detriment of our organized legal system, and would encourage universal pleas of ignorance of the law that would constantly pose confusing

---

[8]  Neither party challenges this instruction on appeal.

[9]  *See* AS 11.81.620(a).

and, to a great extent, insolvable issues of fact to juries and judges, thereby bogging down our adjudicative system."[10]

The Alaska legislature codified certain exceptions to this rule in AS 11.81.620, which provides that defendants may avoid criminal liability based on a mistake of law or fact under limited circumstances. The circumstances permitting a mistake-of-law defense are set out in subsection (a), which states:

> Knowledge, recklessness, or criminal negligence as to whether conduct constitutes an offense, or knowledge, recklessness, or criminal negligence as to the existence, meaning, or application of the provision of law defining an offense, is not an element of an offense unless the provision of law clearly so provides.[11]

The circumstances permitting a defendant to be relieved of criminal liability based on a mistake of fact are set out in the following subsection, subsection (b), which states:

> A person is not relieved of criminal liability for conduct because the person engages in the conduct under a mistaken belief of fact, unless
>
> > (1) the factual mistake is a reasonable one that negates the culpable mental state required for the commission of the offense;
> >
> > (2) the provision of law defining the offense or a related provision of law expressly provides that the factual mistake constitutes a defense or exemption; or

---

[10] *Ostrosky v. State*, 704 P.2d 786, 791 (Alaska App. 1985) (quoting *United States v. Barker*, 546 F.2d 940, 954 (D.C. Cir. 1976) (Merhige, District J., concurring)).

[11] AS 11.81.620(a); *see State v. Strane* (*Strane II*), 61 P.3d 1284, 1289 (Alaska 2003) (stating that AS 11.81.620(a) explains the impact that mistake or ignorance of the law can have on criminal liability).

(3) the factual mistake is a reasonable one that supports a defense of justification as provided in AS 11.81.320 – 11.81.430.[12]

In *State v. Strane*, the Alaska Supreme Court discussed the application of these provisions of law to a charge of violating a domestic violence protective order under a prior version of AS 11.56.740.[13] There, the supreme court held that the defendant could not argue for acquittal based on his mistaken belief that a no-contact provision in the protective order did not apply if the person protected by the order agreed to the contact.[14]

The prior version of AS 11.56.740 at issue in *Strane* declared that it was unlawful to knowingly commit or attempt to commit an act in violation of certain provisions of a domestic violence protective order.[15] Strane was charged with contacting his domestic partner, D.A., in violation of a domestic violence protective order's no-contact provision. His proposed defense was that, even though a separate statute, AS 18.66.130(a), explicitly stated that a petitioner's consent to have contact with a respondent does not waive or nullify any provision of a protective order, he acted under the belief that the no-contact provision would not apply if D.A. consented to the contact.

___

[12] AS 11.81.620(b); *see Russell v. State*, 793 P.2d 1085, 1087 (Alaska App. 1990) (stating that, under AS 11.81.620(b), a mistake of fact can be a defense to a crime if it is a reasonable mistake).

[13] *Strane II*, 61 P.3d at 1289, 1292. As we explain in greater detail later in this opinion, AS 11.56.740 has since been amended by the legislature, and as a result, the supreme court's decision in *Strane II* is not dispositive of the issue Hughes raises in this appeal.

[14] *Id.*

[15] Former AS 11.56.740(a) (1998). The current version of this statute declares that a person is guilty of violating a protective order if they "knowingly commit[] or attempt[] to commit an act with reckless disregard that the act violates or would violate a provision of the protective order." AS 11.56.740(a)(1).

The trial court determined Strane could not assert ignorance or mistake of the law, and it precluded Strane's proposed defense.[16] Strane ultimately was convicted.[17]

Strane appealed, and this Court disagreed with the trial court's ruling precluding Strane's defense.[18] We first noted that we had previously treated questions as to what conduct is required or prohibited by a court order as questions of fact.[19] Thus, "when the government charges a defendant with violating a court order, the fact that the court order requires or prohibits certain conduct is the circumstance that makes the defendant's conduct [unlawful]."[20] For this reason, we rejected the State's position that a defendant's violation of a restraining order can never be excused because of (1) the defendant's ignorance of the terms of the restraining order, or (2) the defendant's misunderstanding concerning the meaning of those terms.[21]

Next, we explained that the legislature's use of the word "knowingly" in former AS 11.56.740 could be interpreted in two different ways. First, it could apply to the defendant's conduct, such that the State was required to prove that Strane "knowingly" engaged in conduct that violated the protective order and that he recklessly disregarded the possibility that his conduct violated the order.[22] Under this interpretation, Strane could assert that he reasonably misunderstood the meaning of the

---

[16] *Strane II*, 61 P.3d at 1285.

[17] *Id.*

[18] *Strane I*, 16 P.3d 745, 752 (Alaska App. 2001).

[19] *Id.* at 748-49.

[20] *Id.* at 749.

[21] *Id.*

[22] *Id.* at 750; AS 11.81.900(a)(3).

court order.[23]  Alternatively, the word "knowingly" could apply to the circumstances of whether the defendant's conduct violated the terms of the protective order, such that the State would have to prove that Strane 'knowingly' disregarded the fact that his conduct violated the protective order.  Under this second interpretation, the State would have to prove that Strane was aware that his conduct violated the order or that he was aware of a substantial probability that his conduct violated the order and did not actually (subjectively) believe that his conduct was permitted by the court order.[24]

Because the statute was "irresolvably ambiguous" with respect to the application of this mental state, we applied the rule of lenity, concluding that the State was required to prove that Strane acted "knowingly" with respect to the circumstance that his conduct violated the protective order.[25]  For this reason, we concluded that the trial court had erred when it held that Strane's good-faith belief that his conduct did not violate the order was irrelevant.[26]

The State filed a petition for hearing with the supreme court, arguing that it was not required to prove *any* mental state concerning Strane's understanding of the order.[27]  In response, Strane urged the supreme court to affirm this Court's conclusion "that the crime of violating a protective order can be committed only by a person who knowingly engages in prohibited actions and knows that those actions are prohibited."[28]

---

[23]  *Strane I*, 16 P.3d at 750.

[24]  *Id.*; AS 11.81.900(a)(2).

[25]  *Strane I*, 16 P.3d at 752.

[26]  *Id.* at 752.

[27]  *Strane II*, 61 P.3d 1284, 1287 (Alaska 2003).

[28]  *Id.*

The supreme court granted the State's petition and reversed this Court's decision, holding that "the correct interpretation of [former AS 11.56.740(a)] lies somewhere between [the parties'] opposing positions."[29]

The court explained that, under AS 18.66.130(a), a petitioner's consent to have contact with a respondent does not waive or nullify any provision of a protective order.[30] And under AS 11.81.620(a), a defendant may claim mistake or ignorance of law only if the statute they are accused of violating "clearly" requires proof of a culpable mental state with regard to whether their conduct constitutes an offense.[31] The supreme court adopted this Court's determination that former AS 11.56.740 was "irresolvably ambiguous" with respect to the culpable mental state, and the court held that, given this ambiguity, the statute did not "clearly" require a particular mental state with regard to whether the conduct was prohibited by the protective order.[32] The court thus concluded that Strane's claim that he mistakenly believed that he was permitted to have contact with D.A. if she consented to the contact was a "prohibited claim of ignorance of the law" (*i.e.*, ignorance of the provisions of AS 18.66.130(a)).[33]

In its opinion, the supreme court rejected Strane's contention that "precluding [his] mistake-of-law defense [would] create a constitutional problem" because it would allow him to be convicted without any "awareness of wrongdoing."[34] The court distinguished the statute at issue in Strane's case from the statute underpinning

---

[29] *Id.*

[30] *Id.* at 1288.

[31] *Id.* at 1289.

[32] *Id.*

[33] *Id.*

[34] *Id.* at 1290-92.

several federal cases that had adopted subjective awareness of wrongdoing as a necessary culpable mental state.[35] The supreme court noted that the offense of violating a restraining order is more analogous to criminal contempt, and it further noted that, in contempt cases, courts routinely apply a culpable mental state of reckless disregard, which is a standard less demanding on the prosecution than consciousness of guilt.[36] This standard, the supreme court explained, "does not permit defenses based on either a pure mistake of law or a good faith but unreasonable mistake of fact."[37] The court did not explain what it meant by a defense based on "a pure mistake of law" but it appears to have meant a defense of ignorance of the law, rather than a defense of reasonable mistake of law. In other words, the mental state of "reckless disregard" would not permit a defense of ignorance of the law, nor would it permit a defense of unreasonable mistake of fact, but it would allow other mistake-of-law or mistake-of-fact defenses.[38]

The supreme court ultimately held that former AS 11.56.740(a) did not require the State to prove that the defendant acted knowingly with respect to whether their conduct violated the order, but it did require proof that the defendant knew of the restraining order's existence and the relevant no-contact provision and that, so knowing, the defendant recklessly disregarded a substantial and unjustifiable risk that their conduct was prohibited by the order (*i.e.*, that they acted recklessly as to the illegality of their conduct).[39]

---

[35] *Id.*

[36] *Id.* at 1292.

[37] *Id.*

[38] *See id.*

[39] *Id.*

During its discussion of the availability of Strane's proposed defense, the supreme court cited with approval this Court's opinion in *Busby v. State*, a case in which we had relied on AS 11.81.620(a) to determine the propriety of the defendant's proposed mistake-of-law defense.[40] In that case, Busby admitted that he knew his Alaska driver's license was revoked, but he sought to defend himself based on his mistaken belief that an international driver's license he had subsequently obtained allowed him to drive in spite of the Alaska revocation. The trial court refused to allow Busby to present this defense, and Busby appealed this decision.

On appeal, this Court first examined the elements of the crime of driving with a revoked license in violation of AS 28.15.291(a).[41] We noted that, to prove this offense, the State was required to establish that Busby drove a motor vehicle at a time when his driver's license had been revoked, and that he acted with criminal negligence as to the revoked status of his license.[42]

We next explained that AS 11.81.620(a) declares that a defendant's knowledge, recklessness, or criminal negligence as to the meaning or application of a provision of law defining an offense is not an element of the offense unless the provision of law clearly so provides. Furthermore, the statute defining the crime of driving with a revoked license does not require the State to prove *anything* about a defendant's understanding of the effect or scope of the revocation; the State must prove only that the defendant drove at a time when their license was revoked and that the defendant acted with criminal negligence regarding whether the revocation had occurred. In other words, Busby's understanding of the legal effect of the revocation, and whether he could legally

---

[40] *Id.* at 1289-90 (citing *Busby v. State*, 40 P.3d 807, 816-17 (Alaska App. 2002)).

[41] *Busby*, 40 P.3d at 816.

[42] *Id.*

drive despite the revocation, was not an element of the offense. We accordingly concluded that whether Busby mistakenly believed that his international driving permit authorized him to drive in Alaska even when his Alaska driver's license was revoked was irrelevant, and we affirmed the trial court's ruling.[43]

In both *Busby* and *Strane*, the question of whether the defendant could raise a mistake-of-law defense was governed by AS 11.81.620(a), which allows such a defense only when a provision of law clearly requires "knowledge, recklessness, or criminal negligence" as to whether conduct constitutes an offense or as to the existence, meaning, or application of the provision of law defining an offense. In *Busby*, this Court determined that the statute criminalizing driving with a revoked license did not clearly require a particular mental state with regard to whether the defendant was legally authorized to drive a motor vehicle.[44] And in *Strane*, the supreme court determined that the statute criminalizing the violation of a protective order did not clearly allow a defendant to claim ignorance of AS 18.66.130(a)'s mandate that a petitioner's consent has no effect on a protective order's no-contact provision.[45]

We accordingly conclude that whether Hughes may raise a mistake-of-law defense to the *current* version of AS 11.56.740(a) is also governed by AS 11.81.620(a), and it hinges on whether the current version of AS 11.56.740(a) clearly requires the State to prove a mental state with regard to Hughes's understanding of whether his conduct was prohibited by a protective order.

---

[43] *Id.* at 816-17.

[44] *Id.*

[45] *Strane II*, 61 P.3d at 1289.

*The current statute criminalizing the violation of a domestic violence protective order clearly requires a particular mental state with regard to whether the charged conduct was prohibited by the protective order*

The Alaska legislature amended the statute at issue in this case, AS 11.56.740(a), in response to this Court's opinion in *Strane*.[46] At the time of Strane's offense, AS 11.56.740(a) made it unlawful to "knowingly commit[] or attempt[] to commit an act" that violates a domestic violence protective order.[47] As we have explained, the supreme court ultimately held that this statutory language required the State to prove that the defendant's actions were knowing, that the defendant knew of the restraining order's existence and its requirements, and that the defendant recklessly disregarded a substantial and unjustifiable risk that their conduct was prohibited by the restraining order.[48] However, because *Strane* was interpreting an earlier version of AS 11.56.740(a), it is not dispositive of whether the current version of this statute requires the State to prove a mental state with regard to the defendant's understanding of whether their conduct is prohibited by a protective order.

Under the current version of this statute (the version Hughes was accused of violating), it is unlawful for a person to "knowingly commit[] or attempt[] to commit an act with reckless disregard that the act violates or would violate a provision of [a domestic violence] protective order."[49]

On its face, this version of AS 11.56.740(a) requires the State to prove that the defendant violated a protective order and that the defendant acted recklessly with

---

[46] *See* SLA 2002, ch. 113, § 1.

[47] Former AS 11.56.740(a) (1998).

[48] *See Strane II*, 61 P.3d at 1292.

[49] AS 11.56.740(a)(1).

respect to whether their act would violate the order — *i.e.*, whether the defendant was aware of and consciously disregarded a substantial and unjustifiable risk that their conduct was prohibited by the order. Thus, the plain language of the current statute requires the State to prove a mental state regarding the defendant's understanding of the legal effect of the protective order.

But when Alaska courts interpret a statute, we "consider its language, its purpose, and its legislative history, in an attempt to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others."[50] Thus, despite the clear language of the statute, we have reviewed the statute's legislative history to better understand the legislative intent.

As we have explained, AS 11.56.740(a) was amended after this Court issued its opinion in *Strane*. And in *Strane*, this Court held that the former version of AS 11.56.740(a) was "irresolvably ambiguous" with respect to the required mental state. We accordingly applied the rule of lenity, requiring the State to prove that, beyond knowing of the protective order's existence and contents, a defendant must also realize that their conduct violated the protective order.[51]

At the time the legislature enacted the changes, the supreme court had not yet issued its opinion in *Strane*, and the legislature sought to resolve the statutory ambiguity that we had identified in *Strane* itself, rather than waiting for the supreme court to do so.

---

[50] *Cleveland v. State*, 241 P.3d 504, 506 (Alaska App. 2010) (quoting *Alyeska Pipeline Serv. Co. v. State, Dep't of Envtl. Conservation*, 145 P.3d 561, 566 (Alaska 2006)).

[51] *Strane I*, 16 P.3d 745, 752 (Alaska App. 2001); *see Strane II*, 61 P.3d at 1288 (stating that this Court "ruled [that] Strane had to realize that his conduct violated the protective order").

Representative Eric Croft sponsored House Bill 348, the bill that would amend the statute, and his proposal was to provide that a defendant could be relieved of criminal liability only if they acted "recklessly" with regard to whether their actions would violate the protective order. Representative Croft described his proposed change as a "simple measure that describes the knowledge requirement [needed] to prove violation of a domestic violence restraining order."[52] He noted that, in *Strane*, the prosecution and the defense argued "two extreme positions," and he referred to this excerpt from our opinion in that case:

> Strane and the State approach this statute from radically different perspectives. Strane argues that the legislature used the word "knowingly" to convey the notion that the crime is committed only if the defendant understood the provision(s) of the protective order and was aware that, by their conduct, they were violating the protective order. The State argues the polar opposite. The State contends that, just as ignorance of the law does not excuse a person's violation of a criminal statute, so too ignorance or misunderstanding of the provisions of a protective order does not excuse a person's violation of that order. The State argues that a person who violates the provisions of a protective order is guilty of a crime under AS 11.56.740(a) even if they acted with no culpable mental state — *i.e.*, acted with absolutely no awareness that their conduct might violate the provisions of the order.
>
> The rule at common law — that is, the rule that would prevail in the absence of a statute — lies in between the positions staked out by Strane and the State. Violation of a domestic violence protective order is but one specific, codified instance of the more general crime of contempt of court. In previous

---

[52] Minutes of Senate Rules Comm., House Bill 348, statement of Rep. Eric Croft, Tape 02-13, Side A at 001 (May 11, 2002).

cases dealing with contempt of court, this court has held (1) that the applicable culpable mental state is "recklessness" (*i.e.*, the government must prove that the defendant recklessly disregarded the possibility that their conduct violated an order of the court), and (2) that a person charged with contempt can defend by asserting that they made a reasonable mistake concerning the terms or the effect of the court order.[53]

Representative Croft stated that House Bill 348 would establish the "middle ground" position — *i.e.*, the common law rule requiring a "recklessness" *mens rea* described in *Strane* — as the legal standard, rather than adopting either party's "extreme position." And, as we explained in the excerpt from *Strane* quoted by Representative Croft, this standard allows a person to defend by asserting that they "made a reasonable mistake concerning the terms or *the effect* of the court order."[54] By adopting the common law rule described in *Strane*, the legislature accepted the view that assertions that the defendant was mistaken about the contents of a protective order and assertions that the defendant reasonably believed their conduct was lawful are both valid defenses to this crime.[55]

In discussing the proposed legislation, Representative Croft noted that Strane's case was being considered by the supreme court and that it was possible that the supreme court would not adopt this proposed "middle ground" standard. But he explained that "it's [the legislature's] job to establish the appropriate standard," and that,

---

[53] Minutes of House Judiciary Comm., House Bill 348, statement of Rep. Eric Croft, Tape 02-23, Side B at 1589 (Feb. 25, 2002) (quoting *Strane I*, 16 P.3d at 747).

[54] *Strane I*, 16 P.3d at 747 (emphasis altered).

[55] *Id.* at 749.

regardless of the supreme court's resolution of Strane's case, the legislature should establish the correct standard for future cases.[56]

Accordingly, when AS 11.56.740(a) was amended to indicate that a person is guilty of violating a domestic violence protective order if they "knowingly commit[] or attempt[] to commit an act *with reckless disregard that the act violates or would violate a provision of the protective order*," the legislature's clear intention was to require the State to prove a culpable mental state as to the defendant's understanding of the effect of the protective order. And as Representative Croft pointed out when he proposed the amendment to AS 11.56.740(a), it is this statutory standard that governs the available defenses to a charge of violating a protective order.[57]

Under AS 11.81.620(a), a defendant may claim mistake of law as a defense if the statute the defendant is accused of violating "clearly" requires proof of a culpable mental state with regard to whether their conduct constitutes an offense. Because both the plain language and the legislative history of AS 11.56.740(a) require the State to prove that the defendant acted with reckless disregard that their conduct was unlawful, AS 11.81.620(a) authorizes a defendant accused of violating a domestic violence protective order to claim that they misunderstood the effect of the order, even though this defense would be categorized as a mistake of law under AS 11.81.620.

*Why we conclude that the jury instructions misstated the law and that the error was not harmless*

In the present case, the trial court correctly instructed the jury on the defense of mistake of fact, but it also instructed the jury that Hughes's "good faith, but

---

[56] Minutes of House Judiciary Comm., House Bill 348, statement of Rep. Eric Croft, Tape 02-23, Side B at 1367 (Feb. 25, 2022).

[57] *See id.* at 1589.

mistaken, subjective belief as to the legal effect of the protective order [was] irrelevant." On appeal, Hughes contends that this instruction misstated the law and undermined his defense.

As we have explained, this instruction is consistent with the general principle of Alaska law that a defendant usually may not be relieved of liability based on a mistaken belief that their conduct was not unlawful.[58] But in this case, AS 11.81.620(a) permitted Hughes to argue that he did not act recklessly with regard to whether the protective order prohibited him from calling Albert. In other words, Hughes could properly argue that the State had not met its burden of proving that he was aware of and consciously disregarded a substantial and unjustifiable risk that calling Albert was prohibited by the protective order. As a result, far from being "irrelevant" to the case, Hughes's subjective understanding of the order was directly relevant to the jury's evaluation of Hughes's guilt.

In our previous opinion in *Hughes v. Anchorage*, we concluded that the failure to give mistake-of-law and mistake-of-fact instructions did not appreciably affect the verdict.[59] But the procedural posture of that case was different from that of the present case. In Hughes's previous case, the jury was instructed that the government was required to prove that Hughes acted recklessly as to the possibility that his conduct violated the no-contact provision in the protective order. Hughes was permitted to present the defense that his mistake negated the requisite mental state for the offense, including by arguing that his conduct was not reckless in light of his reasonably mistaken belief that the order in the child custody case modified the no-contact provision in the

_____

[58]   *See* AS 11.81.620(a).

[59]   *Hughes v. Anchorage*, 2022 WL 534421, at *2 (Alaska App. Feb. 23, 2022) (unpublished).

protective order. And neither the court nor the prosecutor said anything to undermine Hughes's ability to fully develop his defense.

By contrast, in the present case, the trial court's instructions, and the State's conforming closing argument, directly undercut Hughes's defense. Hughes's defense hinged on his claim that he reasonably believed that the protective order had been modified by the civil order. In instructing the jury that "[a] defendant's good faith, but mistaken, subjective belief as to the legal effect of the protective order is irrelevant," the court impermissibly undermined Hughes's defense. And the prosecutor's closing argument exacerbated the impact of this erroneous instruction. The prosecutor told the jury that whether Hughes "believed [the order] was in place or believed [] it allowed him to contact [Albert]" was "irrelevant." The prosecutor also asserted that all that mattered was "what the document said [Hughes] could or could not do" and whether "[Hughes] knew about that document, but he did it anyway." This mistakenly indicated that Hughes was not raising a valid defense to the charge against him.

Both the United States and the Alaska Constitutions guarantee criminal defendants the right to a meaningful opportunity to present a complete defense.[60] The Alaska Supreme Court has held that "a defendant's right to present a defense is a fundamental element of due process."[61] In the present case, the trial court's instruction, as well as the prosecutor's argument based on the instruction, circumscribed Hughes's defense in a manner that went directly to the heart of his defense, essentially disallowing the argument he was making. We thus conclude that the trial court's error was not harmless.

---

[60] *See, e.g.*, *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (cleaned up)); *Smithart v. State*, 988 P.2d 583, 586 (Alaska 1999).

[61] *Smithart*, 988 P.2d at 586.

*Conclusion*

For these reasons, we REVERSE Hughes's conviction and REMAND this case for a new trial.

2768

Judge WOLLENBERG, concurring.

I agree with the Court's decision to reverse the judgment of the district court, but I do so for different reasons than those expressed in the majority opinion. I therefore write separately to explain my views on the issues raised in this case.

In its opinion today, the majority rests its analysis on the legislative history surrounding the 2002 amendments to AS 11.56.740(a).[1] But the amended version of this statute does not require the State to prove an additional element it was not already required to prove when the Alaska Supreme Court rejected the defendant's "mistake-of-law" defense in *State v. Strane*.[2] Thus, if Hughes's defense is analogous to the defense raised in *Strane*, then *Strane* would seemingly prohibit that defense.

I conclude, however, that Hughes's defense is not analogous to the defense prohibited in *Strane*. *Strane*'s defense ultimately amounted to an assertion that he was unaware of one of the statutes that governed his conduct. In contrast, Hughes claimed to believe that the protective order (or, at least, a portion of it) had been modified by a later order issued in a separate child custody case. In my view, this defense would have been permitted even under *Strane*, and is therefore permitted under the current version of AS 11.56.740(a)(1).

---

[1] Hughes was convicted under subsection (a)(1) of AS 11.56.740. At the time of the offense in *Strane* and the 2002 amendments, this crime was codified as subsection (a); there were not yet any additional paragraphs in that subsection.

[2] *State v. Strane* (*Strane II*), 61 P.3d 1284 (Alaska 2003).

*The proper framework for understanding mistakes of law and mistakes of fact*

The traditional distinction between mistakes of law and mistakes of fact is sometimes more confusing than it is helpful. It is often said that ignorance of the law is no defense, and that a mistake of fact is a defense. But as Professor Wayne R. LaFave explains, "Neither of these propositions is precisely correct, and both are subject to numerous exceptions and qualifications."[3]

This is true in part because the law/fact distinction is not as clear cut as one might think.[4] Of course, AS 11.56.740 — the statute that makes it a crime to violate a protective order — is a "law." And it is a "fact" that Hughes made a phone call to his ex-girlfriend. But what about the specific provisions of Hughes's protective order? They are not laws in the sense of being part of "the body of rules, standards, and principles that the courts of a particular jurisdiction apply in deciding controversies brought before them[.]"[5] But they are also not facts, at least in the sense of "historical

---

[3]    1 Wayne R. LaFave, *Substantive Criminal Law* § 5.6(a), at 531 (3d ed. 2018).

[4]    *See* 1 Paul H. Robinson, *Criminal Law Defenses* § 62(e), at 265 (1984) (noting that the distinction between mistakes of fact and mistakes of law "has proven very troublesome in practice"); *Tressler v. State*, 1988 WL 1513121, at *2 (Alaska App. Nov. 2, 1988) (unpublished) (recognizing that the concepts of "mistake of law" and "mistake of fact" present "a confusing and conceptually difficult area of the law").

[5]    "Law," *Black's Law Dictionary* (11th ed. 2019). Black's Law Dictionary provides a number of other definitions of "law," none of which would include a provision in a protective order:  (1) "The regime that orders human activities and relations through systematic application of the force of politically organized society," (2) "The aggregate of legislation, judicial precedents, and accepted legal principles; the body of authoritative grounds of judicial and administrative action; esp., the body of rules, standards, and principles that the courts of a particular jurisdiction apply in deciding controversies brought before them," (3) "The set of rules or principles dealing with a specific area of a legal
(continued...)

facts" — *i.e.*, "[a]n actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation[.]"[6] So is a mistake about the content or meaning of a protective order a mistake of law or a mistake of fact? The law/fact distinction fails to readily offer an answer to this question.

Moreover, even if we could confidently say that Hughes is raising a mistake-of-law defense, as the majority implies, that still would not tell us if Hughes's asserted defense is a legally viable one. As Professor LaFave has explained, the phrase "ignorance [or mistake] of the law" is used

> to encompass both the situation in which the defendant is unaware of the existence of a statute proscribing his conduct, and that where the defendant has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct (as where, in a bigamy case, the defendant mistakenly believes that his prior divorce is valid).[7]

Although both are referred to as mistakes of law, Professor LaFave notes that "[t]hese two situations call for quite different analysis and, frequently, different results."[8] Thus, even when we can properly identify a particular mistake as one of law, rather than fact, this fails to answer the question of whether it provides a defense to the crime charged.

---

5 (...continued)
system," (4) "The judicial and administrative process; legal action and proceedings," (5) "A statute," (6) "Common law," and (7) "The legal profession[.]"

6 "Fact," *Black's Law Dictionary* (11th ed. 2019). Black's Law Dictionary also defines a "fact" as "[s]omething that actually exists; an aspect of reality[.]" The provisions of a protective order would certainly fall within this definition, but so too would every statute and regulation in existence. This broad definition of "fact" is not what courts are referring to when they attempt to distinguish mistakes of law from mistakes of fact.

7 LaFave, *Substantive Criminal Law* § 5.6(a), at 531.

8 *Id.*

But, as Professor LaFave has explained, "In actuality, the basic rule is extremely simple: ignorance or mistake of fact or law is a defense when it negatives the existence of a mental state essential to the crime charged."[9]

This simpler approach is consistent with Alaska law. It is true, of course, that we have often described a particular Alaska statute, AS 11.81.620(a), as codifying the rule that ignorance of the law is no defense.[10] But our legislature did not use the phrase "ignorance of law" or "mistake of law" when it drafted AS 11.81.620(a). Instead, AS 11.81.620(a) establishes a presumption against interpreting criminal statutes as requiring proof that the defendant acted with a culpable mental state with respect to whether their conduct constituted an offense. Here is the relevant text of the statute:

> Knowledge, recklessness, or criminal negligence as to whether conduct constitutes an offense, or knowledge, recklessness, or criminal negligence as to the existence, meaning, or application of the provision of law defining an offense, is not an element of an offense unless the provision of law clearly so provides.[11]

This language, which focuses on defining the elements of an offense, rather than categorizing mistakes as ones of law or of fact, essentially follows the rule

---

[9] *Id.*

[10] *See, e.g.*, *Stoner v. State*, 421 P.3d 108, 110 (Alaska App. 2018) (stating that the principle that a "person's ignorance of a criminal statute, or a person's misunderstanding of a criminal statute, is not a defense" is codified in AS 11.81.620(a)); *Strane v. State* (*Strane I*), 16 P.3d 745, 748 (Alaska App. 2001) (explaining that "Alaska law generally does not recognize mistake of law as a defense to a criminal charge" and citing to AS 11.81.620(a)); *Duny v. State*, 2018 WL 388613, at *2 (Alaska App. Jan. 10, 2018) (unpublished) (same). *Cf.* Alaska Criminal Code Revision, Tentative Draft, Part II, at 22 (1977) (explaining that this provision "states the universal principle that, ordinarily, ignorance of the law is no defense").

[11] AS 11.81.620(a).

articulated by Professor LaFave: "ignorance or mistake of fact or law is a defense when it negatives the existence of a mental state essential to the crime charged."[12]

With this framework in mind, I turn to the Alaska Supreme Court's decision in *Strane*, and why I conclude that Hughes's defense here would have been permitted even under that case — *i.e.*, even absent the 2002 amendments to AS 11.56.740(a).

*Why I conclude that Hughes's defense would have been permitted even under Strane*

Patrick Strane was charged with violating a protective order under AS 11.56.740(a) after he was found in a car with D.A., the person protected by the order.[13] The parties agreed that D.A. initiated the contact when she called Strane and asked him to pick her up. By the time of trial, the parties also agreed that the protective order prohibited Strane from being in D.A.'s presence, regardless of whether D.A. initiated the contact, and that Strane was generally aware of the contents of the order. But Strane claimed that, at the time he was in D.A.'s presence, he was operating under the mistaken belief that D.A.'s willingness to have contact with him overrode the no-contact order's provisions.[14]

At the time of Strane's offense, AS 11.56.740(a) provided that: "A person commits the crime of violating a protective order if the person is subject to a protective

---

[12] LaFave, *Substantive Criminal Law* § 5.6(a), at 531.

[13] *Strane II*, 61 P.3d 1284, 1285 (Alaska 2003).

[14] *Id.*

order containing a provision listed in AS 18.66.100(c)(1)-(7) and knowingly commits or attempts to commit an act in violation of that provision[.]"[15]

In this Court's original decision in *Strane*, we concluded that the application of the culpable mental state of "knowingly" to the "circumstance" that the defendant's act was "in violation of [a] provision [in a protective order]" meant that the State was required to prove that "Strane 'knowingly' disregarded the fact that his conduct violated the protective order."[16] Given this conclusion, we held that Strane's mistaken belief that he could be with D.A. if she initiated contact negated an element of the offense. That is, if Strane mistakenly believed that the order did not prohibit contact if that contact was initiated by D.A., then Strane could not be said to have "knowingly disregarded the fact that his conduct violated the protective order."[17]

But, as the Alaska Supreme Court explained in its decision in *Strane*, the circumstance element of the crime of violating a protective order — *i.e.*, the fact that the defendant's act was "in violation of [a] provision [in the protective order]" — actually requires proof of three distinct circumstances:

> (1) the existence of a valid restraining order applicable to the defendant and the alleged victim; (2) the existence in the restraining order of at least one of the seven no-contact restrictions listed in AS 18.66.100(c)(1)-(7); and (3) the inclusion in at least one of these listed restrictions of a prohibition covering the specific contact that the defendant allegedly committed.[18]

---

[15] Former AS 11.56.740(a) (1998).

[16] *Strane I*, 16 P.3d 745, 750-52 (Alaska App. 2001).

[17] *Id.*

[18] *Strane II*, 61 P.3d at 1288.

Thus, the supreme court reasoned, the application of the mental state "knowingly" to the "circumstance" that the defendant's act violated a provision of a protective order could actually mean three different things:

> (1) that Strane had to know that a valid restraining order existed and named him as its subject; (2) that he also had to know of the order's contents — in other words, that he had to be on notice of the relevant no-contact provision; or (3) that, beyond knowing of the order's existence and contents, Strane had to understand its meaning and effect as applied to his conduct — that is, that Strane had to realize that the order prohibited his actions.[19]

The supreme court interpreted our decision as adopting the third meaning, but stated that this Court "failed to explain why it adopted this meaning" and "indeed . . . did not recognize any other possible meaning."[20]

In rejecting this Court's interpretation of AS 11.56.740(a), the supreme court relied on two statutes: AS 18.66.130(a) and AS 11.81.620(a). Alaska Statute 18.66.130(a) — which the supreme court referred to as a "sister provision" of the statute criminalizing the violation of a protective order (*i.e.*, AS 11.56.740) — expressly states that a petitioner's consent to have contact with a respondent "does not waive or nullify any provision in a protective order."[21] Alaska Statute 11.81.620(a), as already discussed, establishes a presumption against interpreting criminal statutes as requiring proof that the defendant acted with a culpable mental state with respect to whether their conduct constituted an offense or with respect to the existence, meaning, or application of the provision of law defining an offense.

---

[19]  *Id.*

[20]  *Id.*

[21]  *Id.* (quoting AS 18.66.130(a)).

Applying these two statutes together, the supreme court concluded that "under the limiting effects of [AS 11.81.620(a)], AS 11.56.740(a)'s ambiguous phrase 'knowingly commits or attempts to commit an act in violation of [a protective order],' cannot be construed to require proof that Strane understood that his conduct constituted an offense."[22]

But the supreme court did not interpret AS 11.56.740(a) as *entirely* eliminating proof of a culpable mental state with respect to whether the defendant's conduct constituted an offense. Rather, in its concluding paragraph, the court wrote:

> We thus hold that AS 11.56.740(a) did not require the state to prove Strane's actual knowledge of illegality; instead, the statute's culpable mental state requirement as to the surrounding circumstances of the offense could be met by showing that Strane knew of the restraining order's existence and contents *and that, so knowing, he recklessly disregarded a substantial and unjustifiable risk that his conduct was prohibited by the order*.[23]

Thus, the supreme court clearly held that AS 11.56.740(a) (now subsection (a)(1)) requires proof that the defendant was reckless as to whether their conduct was prohibited by the order — *i.e.*, that the defendant was aware of and consciously disregarded a substantial and unjustifiable risk that their conduct violated the order.

This aspect of the supreme court's interpretation of AS 11.56.740(a) is not meaningfully explained elsewhere in its decision. But the supreme court's inclusion of this element makes sense when read in the context of *this* Court's initial decision in *Strane*, which itself explained two important points of law.

---

[22]  *Id.* at 1289.

[23]  *Id.* at 1292 (emphasis added).

First, we explained that a violation of a domestic violence protective order "is but one specific, codified instance of the more general crime of contempt of court," and that in a traditional contempt of court prosecution, the State "must prove that the defendant recklessly disregarded the possibility that their conduct violated an order of the court."[24] Second, we explained that a separate statute, AS 11.81.610(b)(2), provides that the State must normally prove that the defendant acted "recklessly" with respect to a circumstance element of the crime, unless the statute prescribes a different culpable mental state.[25] These two points explain why, even if the State is not required to prove that the defendant *knew* of the circumstance that their conduct constituted an offense, the State is still required to prove that the defendant was *reckless* as to that circumstance.

Given my interpretation of the supreme court's decision in *Strane*, I do not think it is sufficient for the majority to rely on the legislature history surrounding the 2002 amendments to AS 11.56.740(a).[26] The majority concludes that when the legislature amended AS 11.56.740(a) to require proof that the defendant commit an act "with reckless disregard that the act violates or would violate a provision of the protective order," the legislature clearly intended "to require the State to prove a culpable mental state as to the defendant's understanding of the effect of the protective order." While I agree with this general assertion, it does not serve to differentiate this case from *Strane*, in which the supreme court acknowledged that the State was required to prove a culpable mental state (recklessly) as to the defendant's understanding of the protective order, and yet nonetheless held that Strane's chosen defense was an impermissible mistake-of-law defense. I must therefore explain why Hughes's defense is meaningfully

---

[24] *Strane I*, 16 P.3d 745, 747 (Alaska App. 2001).

[25] *Id.* at 749.

[26] SLA 2002, ch. 113, § 1.

different from Strane's — *i.e.*, why Hughes should be permitted to raise his defense when Strane was not.

In *Strane*, the supreme court held that the State was not required to prove that Strane knew he was precluded from having contact with the petitioner even if she consented to contact. In doing so, the supreme court relied heavily on AS 18.66.130(a), which, the court wrote, "expressly provides that a petitioner's consent to have contact with a respondent neither waives nor nullifies any provision in a protective order."[27] The court explained that AS 11.81.620(a) (the statute often described as barring a "mistake-of-law" defense) was "activate[d]" by AS 18.66.130(a), and the court concluded that "Strane cannot claim ignorance of AS 18.66.130(a) as a defense[.]"[28]

Thus, although Strane was ostensibly claiming that he did not know that his conduct violated the order (or at least was not reckless as to this fact), he was ultimately claiming that he was not aware of AS 18.66.130(a) (*i.e.*, the statute providing that the petitioner's consent to contact by the respondent "does not waive or nullify any provision in a protective order"). As I have discussed above, the law/fact distinction fails to answer the question of whether a defendant's mistaken belief that their conduct did not violate a protective order is a mistake of law or a mistake of fact. But Strane's defense did not fall within this ambiguous gray area. Rather, Strane's defense, properly understood, is a classic mistake-of-law defense — *i.e.*, a claim that the defendant was not aware of a provision of *law* governing his conduct.

Here, by contrast, the State has not pointed to any provision of law that bars Hughes's defense. According to Hughes, he mistakenly believed that the no-contact provision in his protective order had been modified by a later order issued in a child

---

[27] *Strane II*, 61 P.3d at 1288.

[28] *Id.* at 1289, 1292.

custody case which forbade him from calling his ex-girlfriend "excessively." Although Hughes was legally incorrect as to the meaning of the child custody order, there is no statute barring a court in a child custody case from modifying an earlier domestic violence protective order. (Indeed, a judge in a custody case has the authority to modify an earlier protective order.[29])

I therefore conclude that there is no general presumption against interpreting AS 11.56.740(a)(1) as permitting Hughes's defense. Indeed, this seems to be precisely the situation, contemplated by Professor LaFave, in which the defendant has "a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct."[30]

The only remaining question is whether Hughes's defense would negate an element of the crime charged. I conclude that it would, if credited by the jury. The State was required to prove, *inter alia*, that Hughes acted "with reckless disregard that [his] act violate[d] . . . a provision of the protective order."[31] A person acts recklessly with respect to a circumstance when they are "aware of and consciously disregard[] a

---

[29]  Alaska Statute 18.66.120 gives courts the authority to modify domestic violence protective orders, and courts handling divorce and child custody proceedings may review and modify earlier protective orders. *See Ruerup v. Ruerup*, 408 P.3d 1203, 1207 (Alaska 2018) (recognizing the authority of a judge in a divorce and custody case to modify a domestic violence protective order).

[30]  1 Wayne R. LaFave, *Substantive Criminal Law* § 5.6(a), at 531 (3d ed. 2018); *see also id.* at 534-35 (comparing a situation where the defendant took another's property because the defendant believed his prior dealings had vested ownership of the property in him — and thus demonstrated his lack of intent to steal — with a situation where the defendant took property he knew was owned by another but he was otherwise unaware that such a taking was proscribed by the criminal law — an impermissible mistake-of-law defense).

[31]  AS 11.56.740(a)(1).

substantial and unjustifiable risk . . . that the circumstance exists."[32]  Furthermore, the "risk must be of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[33]

Hughes's defense, if believed, would potentially negate this element in one of two possible ways.  First, if Hughes genuinely believed that the no-contact provision was no longer applicable, he was arguably not "aware of," and thus could not "consciously disregard" the risk that his conduct violated the order.  Second, even if Hughes was aware of the *risk* that his conduct violated the order, his belief that the no-contact provision was no longer applicable could arguably prove that his disregard of that risk was not "a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[34]

Thus, I agree with the majority that Hughes's defense was a legally valid defense that he was permitted to present to the jury, but I reach this conclusion for different reasons.  I also agree with the majority that although Hughes was technically permitted to present this defense, the court's purported "mistake-of-law" instruction to the jury — stating that Hughes's "good faith, but mistaken, subjective belief as to the legal effect of the protective order [was] irrelevant" — combined with the State's closing argument, created a serious risk of misleading the jury into thinking that his defense was not legally viable.

Our decision in *Cornwall v. State* illustrates this point.[35]  In *Cornwall*, the defendant was charged with custodial interference for moving her child out of state when

---

[32]  AS 11.81.900(a)(3).

[33]  *Id.*

[34]  *Id.*

[35]  *Cornwall v. State*, 915 P.2d 640 (Alaska App. 1996).

custody over the child had been transferred to the Division of Family and Youth Services.[36] A lawyer had advised the defendant that there was substantial doubt about the validity of the custody orders, but the trial court precluded the defendant from presenting the testimony of her lawyer on this point.[37]

We held that, while the lawyer's testimony was inadmissible for the purpose of establishing that the custody orders had no legal effect on the defendant, the testimony *was* admissible to negate the mental state required by the custodial interference statute — *i.e.*, to show that the defendant did not know that she had no legal right to take the child.[38] As we explained, the defendant's "subjective understanding of the legal effect of the superior court's custody orders was directly relevant to the proof or disproof of this element."[39]

Similarly, here, Hughes's subjective understanding of the legal effect of the custody order on the existing protective order *was* relevant to assessing whether Hughes possessed one of the requisite mental states under AS 11.56.740(a)(1) — *i.e.*, whether he recklessly disregarded the fact that his conduct would violate a provision of the protective order. This defense is permitted under AS 11.81.620(a).

For these reasons, I concur in the judgment of the Court.

---

[36] *Id.* at 642-44.

[37] *Id.* at 646-47.

[38] *Id.* at 648.

[39] *Id.* at 649. Similarly, in *Vickers v. State*, this Court — addressing an analogous situation to Hughes's case — stated that the defendant's "honest subjective belief as to the meaning of a judicial order" is alone insufficient to support an acquittal. *Vickers v. State*, 175 P.3d 1280, 1283-84 (Alaska App. 2008). But the defendant's subjective belief *may be* relevant to establishing whether the defendant acted "recklessly" — in particular, whether the defendant was aware of a substantial and unjustifiable possibility that his conduct would violate the order. *Id.*